**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PROPERTY SPECIALISTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SCOTTSDALE INDEMNITY COMPANY, <br><br> Defendant. | Case No: |

**COMPLAINT AT LAW**

Plaintiff Property Specialists, Inc. ("**PSI**"), by its undersigned counsel, for its complaint against Defendant Scottsdale Indemnity Company ("**Scottsdale**"), states as follows:

**NATURE OF THE ACTION**

1. This action arises out of Scottsdale's refusal to honor its obligations under the Employment Practices Coverage Section of the Business and Management Indemnity Policy, Policy No. EKI3457873, issued by Scottsdale to PSI for the policy period of December 17, 2022 to December 17, 2023 (the "**Policy**").

2. Pursuant to the Policy, Scottsdale agreed to insure against, among other things, Losses that the Insured became legally obligated to pay by reason of an Employment Practices Claim first made against PSI during the Policy Period.

3. In February 2023, PSI and its President and owner, Catherine D. Ryan ("**Ryan**"), were named as defendants in a lawsuit filed in the Circuit Court of Cook County, Illinois by James A. Moehling ("**Moehling**") in his capacity as successor trustee of the Tracy Hill Declaration of Trust, and Andrew Hill ("**Hill**"), under Case No. 2023 L 001788 (the "**Underlying Lawsuit**").

1

4. PSI and Hill settled the claims asserted against them in the Underlying Lawsuit.

5. PSI timely tendered to Scottsdale its claim for insurance coverage for liabilities and costs incurred in connection with the Underlying Lawsuit (the "**Claim**").

6. Scottsdale denied coverage for the Claim and has not reimbursed PSI for liabilities and costs incurred in connection with the Underlying Lawsuit.

7. In this action, PSI seeks damages for Scottsdale's breach of its contractual obligation to provide insurance coverage for the Claim.

## THE PARTIES

8. PSI is a corporation incorporated and with its principal place of business in Illinois.

9. On information and belief, Scottsdale is a corporation incorporated and with its principal place of business in Ohio.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between PSI and Scottsdale, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to PSI's claim occurred in this judicial district.

## THE FACTS

**A. The Policy**

12. On or about December 17, 2022, in exchange for payment of a premium, Scottsdale issued the Policy to PSI, covering the policy period of December 17, 2022 to December 17, 2023 (the "**Policy Period**"). A copy of the Policy is attached as **Exhibit A**.

13. The Insured under the Policy include PSI, as well as its directors, officers, and employees. (Exh. A, Employment Practices Coverage Section, ¶¶ B.7-8).

14. Pursuant to the terms of the Policy, Scottsdale agreed to insure against, among other things, any **Loss** that the **Insured** became legally obligated to pay by reason of an **Employment Practices Claim** first made against the Insureds during the Policy Period for an "**Employment Practices Wrongful Act**" which took place before the end of the "**Policy Period**" (or, if elected, the **"Extended Period"**). (*Id.* at ¶¶ A.1, B.7-8).

15. **Loss** is defined as "the damages, judgments, settlements, front pay and back pay and **Costs, Charges and Expenses** incurred by any of the **Insureds**." (*Id.* at ¶ B.10). And **Costs, Charges and Expenses** include "reasonable and necessary legal costs, charges, fees, and expenses incurred…in defending **Claims**". (*Id.* at ¶¶ B.3, 10; Endorsement No. 17). **Claims** include Employment Practices Claims. (*Id.* at ¶ B.1).

16. An **Employment Practices Claim** is defined, in relevant part as:

> a. a written demand against an **Insured** for damages or other relief;
> b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom; …
> brought by or on behalf of an **Employee** in their capacity as such.

(*Id.* at ¶ B.5a-b).

17. An **Employment Practices Wrongful Act** is defined, in relevant part, as: "any actual or alleged: … wrongful discharge or termination of employment, whether actual or constructive; breach of an actual or implied employment contract; wrongful deprivation of a career opportunity, wrongful failure or refusal to employ or promote, or wrongful demotion; wrongful discipline; or employment-related wrongful infliction of emotional distress, mental anguish, or humiliation." (*Id.* at ¶¶ B.6d-f,i,j).

18. So inserting the definitions into the coverage provisions in the Policy's insuring clause (*Id.* at ¶ A.1), the Policy, among other things, insures PSI and its President, Ryan, against any [settlements and reasonable and necessary legal costs, charges, fees, and expenses incurred in defending any [written demand against PSI or Ryan for damages or other relief, or civil proceeding commenced by the service of a complaint]] that [PSI or Ryan] became legally obligated to pay by reason of [a written demand against [PSI or Ryan] for damages or other relief, or a civil proceeding commenced by service of a complaint, brought by or on behalf of a PSI employee] first made against [PSI or Ryan] between [December 17, 2022 to December 17, 2023] for an[y] [actual or alleged wrongful discharge or termination of employment or breach of an actual or implied employment contract] which took place before [December 17, 2023].

19. In addition, in order to receive coverage, the **Employment Practices Claim** causing the **Loss** must be reported to the insurer pursuant to Section E.1's notification requirement. (*Id.* at ¶ A.1).

20. The notification requirements in Section E.1 provide that "The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**." (*Id.* at ¶ E.1; Endorsement No. 5).

21. As demonstrated more fully below, PSI rightfully sought, but was denied, coverage for the settlement amount and legal costs and fees it incurred in connection with the Underlying Lawsuit, which was served on PSI and Ryan on February 28, 2023 and was based on Hill's alleged improper termination on December 28, 2022. Further, PSI properly and timely notified Scottsdale of the claim on March 6, 2023, as this was well before the end of the Policy Period in December 2023.

**B. The Underlying Lawsuit and PSI's Loss**

22. On or about February 21, 2023, Moehling (in his capacity as trustee) and Hill (individually), initiated the Underlying Lawsuit against PSI and Ryan. PSI and Hill were served with the complaint on or around February 28, 2023.

23. The Underlying Lawsuit alleged that on December 28, 2022, PSI informed Moehling and Hill that Hill's employment with PSI was terminated. The Underlying Lawsuit further alleged, among other things, that Hill's termination violated a Stock Purchase Agreement which required PSI to employ Hill until his 65th birthday.

24. On March 6, 2023, within one week of being served with the complaint, PSI tendered defense and indemnification of the Underlying Lawsuit to Scottsdale. Thus, PSI timely submitted to Scottsdale the claim for insurance coverage for liabilities and costs incurred in connection with the Underlying Lawsuit (the "Claim").

25. On March 21, 2023, Scottsdale denied coverage for the Claim.

26. In August 2025 PSI and Ryan settled the claims asserted against them in the Underlying Lawsuit. At all times PSI and Ryan disputed the allegations in the Underlying Lawsuit.

27. Scottsdale has maintained its coverage position and has not reimbursed PSI for liabilities and costs incurred in connection with the Underlying Lawsuit.

28. The amount of defense costs incurred by PSI in its defense of the Underlying Lawsuit alone exceeds the retention limits of the Policy.

**C. Scottsdale's Wrongful Denial of Coverage**

29. Scottsdale initially acknowledged that the tender of defense was covered by the Policy when it opened Claim No. 02124852 with a "Wrongful Act" date of December 28, 2022.

5

30. Then, in a March 21, 2023 letter, Scottsdale denied coverage for the Loss suffered from the Underlying Lawsuit under a different policy (Policy No. EKI3410644) that was in effect from December 17, 2021 through December 17, 2022 (the "Coverage Denial Letter", attached hereto as **Exhibit B**). Scottsdale assigned this claim a different Claim No., 02125156.

31. Policy No. EKI3410644 (attached hereto as **Exhibit C**) contains nearly identical terms as the Policy.[1]

32. Scottsdale claimed that the basis for the denial was PSI's late notice under Policy No. EKI3410644.

33. According to Scottsdale, the pertinent Employment Practices Claim was not the Underlying Lawsuit but a letter dated December 31, 2021 from Moehling to PSI. In claiming that this earlier event was the trigger for coverage, Scottsdale cites the definition of "Claims" under the Limit of Liability and Retentions portion of the Employment Practices Coverage Section of Policy No. EKI3410644, which provides that:

> All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be a single **Claim,** and such **Claim** shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:
> a. the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or
> b. the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall have been deemed to have been made pursuant to Section E.2. below.

(Exh. C, Employment Practices Coverage Section, ¶D.3.)

34. Scottsdale asserts that Moehling's December 31, 2021 letter was a "demand for … other relief", making it an Employment Practices Claim, and that the letter and the

---

[1] PSI reserves the right to identify and argue any differences between the Policy and Policy No. EKI3410644 should those differences become material to this case.

Underlying Lawsuit "arise from the same Wrongful Act, namely that Andrew Hill was improperly terminated in violation of the Stock Purchase Agreement."

35. PSI contested Scottsdale's wrongful denial of its claim and described how in a plainly belated effort to deny coverage, Scottsdale unilaterally and without notice or explanation closed Claim No. 02124852 which involved the Policy and opened a new claim, Claim No. 01215156 that now involved Policy No. EKI3410644. (PSI's March 28, 2023 response to the Coverage Denial Letter is attached hereto as **Exhibit D**). Despite PSI's response, Scottsdale refused to reconsider its position.

36. Scottsdale has improperly denied PSI coverage under the Policy because Moehling's December 2021 Letter was not a "Claim" and even if it were a Claim, that Claim was abandoned by Moehling and Hill in 2022 when they realized that Hill had not been terminated. Furthermore, the to the extent that Moehling's December 2021 Letter is considered a "Claim", it was based on a separate and unrelated "Wrongful Act" than the Underlying Lawsuit.

37. PSI rightfully seeks coverage for the settlement amount and legal costs and fees it incurred in connection with the Underlying Lawsuit which was first brought against PSI and Ryan in February 2023 for Hill's alleged improper termination on December 28, 2022. Further, PSI properly and timely notified Scottsdale of the claim on March 6, 2023, as this was well before the end of the Policy Period in December 2023.

38. Further, in refusing to defend or indemnify PSI for any of Loss incurred from the Underlying Suit, Scottsdale "reserve[d] all rights." (Ex. B, Coverage Denial Letter at p. 3). Despite this "reservation of rights", Scottsdale did not defend the Underlying Suit under this purported reservation. Scottsdale has therefore also waived its right to any of the contract defenses because it did not properly deny PSI's defense of the Underlying Lawsuit.

7

39. Despite these issues, Scottsdale continues to deny PSI's coverage for the Underlying Lawsuit.

40. PSI was, accordingly, compelled to bring this action to enforce its rights under the Policy.

## COUNT I
### (Breach of Contract)

41. PSI repeats, realleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

42. PSI has complied with all of its obligations under the Policy.

43. Pursuant to the terms of the Policy, Scottsdale is obligated to indemnify PSI for all sums paid in connection with the Underlying Lawsuit, including any costs incurred in defending the Underlying Lawsuit and the payment that effectuated the settlement of the Underlying Lawsuit.

44. Scottsdale has breached its obligations under the Policy by denying coverage and refusing to indemnify PSI for the liabilities and costs incurred by PSI in connection with the Underlying Lawsuit.

45. As a direct and proximate result of Scottsdale's breach of the Policy, PSI has suffered and continues to suffer damages in an amount in excess of $75,000.00 to be determined at trial.

## COUNT II
### (Violation of Illinois Insurance Code, 215 ILCS 5/155)

46. PSI repeats, realleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

47. Scottsdale has knowingly and intentionally refused to provide insurance coverage to PSI, in breach of its obligations as set forth in the Policy.

48. Scottsdale's refusal to provide coverage was in bad faith and was willful and without reasonable cause.

49. PSI provided Scottsdale with timely notice of the Underlying Lawsuit within one week of service of the complaint, and within two weeks of the filing of the Underlying Lawsuit.

50. Scottsdale wrongfully denied coverage for the Underlying Lawsuit.

51. Further, Scottsdale failed to participate in the defense and chose not to participate in any aspect of the Underlying Litigation.

52. Scottsdale's refusal to defend PSI in the Underlying Lawsuit was and is vexatious and unreasonable, and Scottsdale has failed to undertake good faith efforts to resolve PSI's coverage claim.

53. As a result of Scottsdale's vexatious and unreasonable violation of Illinois Insurance Code, 215 ILCS 5/155, PSI has been damaged and is entitled to the maximum amount awardable under the statute.

WHEREFORE, PSI requests that the Court enter judgment in favor of PSI and against Scottsdale:

   (i) declaring that PSI is entitled to coverage under the Policy for the losses claimed herein;

   (ii) declaring that Scottsdale failed to fulfil its duty to defend and is not entitled to assert any policy-based defenses to coverage, including late notice;

(iii) awarding damages to PSI in an amount to be proven at trial, but no less than the amount it expended in settling and defending the Underlying Lawsuit, including reasonably attorneys' fees, and pre- and post- judgment interest thereon;

(iv) awarding damages to PSI for reasonable attorneys' fees and costs incurred in prosecuting this action;

(v) awarding PSI the maximum additional amount awardable under Illinois Insurance Code, 215 ILCS 5/155; and

(vi) granting such other and further relief as this Court deems just.

**PSI DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

DATED: November 24, 2025

                                        **PROPERTY SPECIALISTS, INC.**

                                        By:   /s/ H. Kuhn O'Toole
                                                      One of its Attorneys

Heather Kuhn O'Toole
Lorrette Fisher
**MELTZER, PURTILL & STELLE LLC**
125 South Wacker Drive, Suite 2900
Chicago, IL 60606
(847) 330-2412
hotoole@mpslaw.com
lfisher@mpslaw.com